Robert T Mills (Arizona Bar #018853)
Sean A Woods (Arizona Bar #028930)
Scott Griffiths (Arizona Bar #028906)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street Suite 101
Phoenix, Arizona, 85014
Telephone (480) 999-4556
docket@millsandwoods.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Pickett, | Case No.: 2:19-cv-05108-JJT |
| Plaintiff, | **RESPONSE TO MOTION TO DISMISS** |
| v. | |
| Century-National Insurance Company, | (Assigned to the Hon. John J. Tuchi) |
| Defendant, | |

When issuing insurance policies, Defendant Century-National Insurance Company ("CNIC") includes a provision that purports to limit the amount of time that an insured can bring a "Suit Against Us." This provision can be added to the insurance policy language pursuant to A.R.S. § 20-1115(A)(3). However, courts have consistently ruled that because insurance contracts are contracts of adhesion where purchasers are not negotiating terms of coverage and performance at arms-length. As such, provisions that deprive the insured of substantive rights (i.e. the presumptive six-year statute of limitations for breach of written contracts – per A.R.S. § 12-548) are not strictly construed. In fact, there are several exceptions to the "Suit Against Us" provisions. At least two equitable exceptions apply here. As such, this Court should deny Defendants' Motion to Dismiss based on the A.R.S. § 20-1115(A)(3)

one-year deadline.[1] Plaintiff's Response is supported by the following Memorandum of Points and Authorities, the attached exhibits which are incorporated by reference, and the Court's entire file in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   FACTUAL BACKGROUND

Plaintiff David Pickett purchased his home in 2011. Complaint at ¶ 25. Mr. Pickett purchased insurance with Central-National Insurance Company ("CNIC") in February 2013. *Id.* at ¶¶ 11-12. On October 18, 2015, a hailstorm occurred causing damage to Mr. Pickett's residence. *Id*. at ¶¶ 15-17.  Mr. Pickett learned about the damage on or around January 20, 2016. *Id.* at ¶¶ 18-19; Policy Declarations Page, attached as Ex. 1; Letter from CNIC, attached as Ex. 2.

Shortly thereafter, on January 26, 2016, CNIC began its investigation and requested additional time to complete its investigation. Letter from CNIC, attached as Ex. 3. In its communication, CNIC indicated that Mr. Pickett's home was in the path of another storm that occurred on October 5, 2010. Complaint at ¶¶ 23-24.  In its communication dated January 26, 2016, CNIC requested documents from Mr. Pickett's home purchase in 2011. Ex. 2.

As part of the investigation, CNIC conducted an interview with Mr. Pickett on January 28, 2016.  CNIC then requested additional time to complete its investigation. Complaint at ¶ 22; Ex. 3.  In fact, CNIC made multiple requests for additional time to complete its investigation. *Id*. at ¶¶ 27, 29, 30, and 37; Letter(s) from CNIC, attached as Exs. 4-6.

---

[1] Defendant's Motion included a request to dismiss Plaintiff's Breach of Covenant of Good Faith and Fair dealing. Plaintiff will voluntarily dismiss its claim of the breach of the covenant of good faith and fair dealing, without prejudice.

2

On March 22, 2016, CNIC wrote to Mr. Pickett to inform him that CNIC had retained counsel to investigate and handle Mr. Pickett's claim. See Ex. 4. As part of that investigation, counsel requested an examination under oath. Ex. 5. Between April and August 2016, CNIC continued to request extensions to complete the investigation. See Ex. 6.

In September 2016, CNIC (through counsel) conducted an examination under oath and requested additional documentation related to Mr. Pickett's home purchase in 2011. Complaint at ¶¶ 29-32. Mr. Pickett engaged in good-faith searches, requests, and inquiries for information responsive to CNIC's demands. *Id*. at ¶ 33. He handed over documents, including an air conditioning service invoice that did not comment on any damage to the roof or air conditioning system. *Id*. at ¶¶ 34-35. Ex. 7. Mr. Pickett also returned loss history reports for the period between August 19, 2011 and August 18, 2012 as well as September 30, 2012 and December 22, 2012 – periods that CNIC was not insuring the property. See Ex. 8. Despite his efforts, CNIC "continued" its investigation – but ultimately denied coverage for the claim on March 17, 2017. Ex. 9.

## II.  LEGAL STANDARD

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting Iqbal, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id*. at 1144-45 (citation omitted).

"[T]he statute of limitations defense . . . may be raised by a motion to dismiss . . . . [i]f the running of the statute is apparent on the face of the complaint[.]" *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). The complaint cannot be dismissed, however, "'unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)); see *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993). Dismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.' *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (quoting *Vaughan v. Grijalva*, 927 F.2d 476, 478 (9th Cir. 1991)); see *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996). The applicability of the equitable tolling doctrine often depends on matters outside the pleadings. Thus, it is not generally amenable to resolution on a Rule 12(b)(6) motion. *Hernandez*, 138 F.3d at 402 (quoting *Supermail Cargo*, 68 F.3d at 1206).

In Arizona, an insurance policy is a contract. *Home Indem. Co. v. Wilson*, 489 P.2d 244, 247 (Ariz. 1971). Arizona's statute of limitations for breach of contract is six years. A.R.S. § 12-548.  Arizona permits insurance policies to be written to limit the time within which an action may be brought to a period as short as one year from the date that a cause of action accrues. A.R.S. 20-1115(A)(3). However, the fact that a policy may purport to limit the time period for a suit to be filed does not meant that it necessarily applies in every situation. There are, in fact, several instances where Suit Against Us" provisions like that in Mr. Pickett's insurance contract are unenforceable. In those situations, actions filed more than a year after

the accrual will survive a motion to dismiss and permit a legitimate claim to be litigated on its merits. As explained below, this is one such situation. As such, this Court should deny Defendants' Motion to Dismiss due to statute of limitations.

### III. ARIZONA COURTS RECOGNIZE MULTIPLE EXCEPTIONS TO CONTRACTUAL LIMITATIONS PERIODS LIKE DEFENDANTS' "SUIT AGAINST US" PROVISION

In *Zuckerman v. Transamerica Ins. Co.*, 133 Ariz. 139, 650 P.2d 441 (Ariz., 1982), the court described insurance contracts as contracts of adhesion in which, "policy conditions are preprinted, form provisions attached to the policy." These provisions may require that an insured put the insurer on notice of a claim or file a lawsuit on or before a certain date. Failure to do so results in an insured losing their claim. *Id*.; *Lindus v. Northern Insurance Co. of New York*, 103 Ariz. 160, 164, 438 P.2d 311, 315 (1968). The *Zuckerman* court also recognized that these insurance contracts are not arms-length transactions, but are one-sided:

> "An insurance agreement such as the ordinary fire policy in issue here is not a contract arrived at by negotiation between the parties. The insured is given no choice regarding terms and conditions of coverage which are contained on forms which the insured seldom sees before purchase of the policy, which often are difficult to understand, and which usually are neither read nor expected to be read by either the person who sells the policy or the person who buys it."

*Zuckerman*, 133 Ariz. at 144.

In other words, the *Zuckerman* court recognized that insurance contracts are not negotiated. The only provisions that a purchaser of a policy can alter is the amount of coverage. *Id*. Therefore, courts have announced exceptions to strict policy provisions that limit when claims may, or may not, be filed.

### A. DEFENDANT WAIVED ITS RIGHT TO INVOKE THE "SUIT AGAINST US" PROVISION BY INVESTIGATING THE CLAIM BEYOND THE ONE-YEAR PROVISION

It is unsurprising that Defendant cited *Zuckerman* for the general proposition that a one-year limitation pursuant to A.R.S. § 20-1115(A)(3) is enforceable, *but failed to discuss the very next sentence*: "**However, the insurer's rights under such a provision may be lost by a waiver or estoppel resulting from continuing negotiations between the parties.** *Shea North, Inc. v. Ohio Casualty Insurance Company*, 115 Ariz. 296, 298, 564 P.2d 1263, 1265 (App.1977)." An insurer's rights under a policy's limitations clause "may be lost by a waiver or estoppel resulting from continuing negotiations between the parties." *Zuckerman*, 133 Ariz. at 142, 650 P.2d at 444. The Court explained negotiation estoppel:

> "A waiver or estoppel with respect to a contractual limitation period will exist if an insurer by its conduct induces its insured, by leading him to reasonably believe a settlement or adjustment of his claim will be effected without the necessity of bringing suit, to delay commencement of the action on the policy until after the limitation period has run."
>
> *Zuckerman*, 133 Ariz. at 142, 650 P.2d at 444 (quoting *Shea North, Inc. v. Ohio Cas. Ins. Co.*, 115 Ariz. 296, 298, 564 P.2d 1263, 1265 (App.1977))

Here, it is patently unfair to permit CNIC to invoke the "Suit Against Us" provision in the insurance policy when it continued its investigation well beyond one year from the accrual date.[2] Mr. Pickett filed his claim in January 2016 and promptly began working with CNIC as they investigated the claim. See Exs. 3-6. CNIC inspected the home and interviewed Mr.

---

[2] Defendants claim that the accrual date of the claim was October 15, 2015. Plaintiff alleges that he learned of the claims in January 2015 – placing the "Suit Against Us" deadline in January 2016. Regardless, as late as March 17, 2017, CNIC was still investigating the claim and requesting additional time. CNIC did not formally deny the claim and close the file until April 17, 2017. See Ex. 9 at p. 9. This was well after the "one year" that Defendants suggest.

Pickett. CNIC then retained counsel who insisted on an examination under oath. Mr. Pickett retained counsel to attend the examination under oath, provided various documents to CNIC, and made good-faith efforts to find documents that CNIC demanded for its ongoing investigation. CNIC sent communications to Mr. Pickett explaining that the investigation was continuing – and it continued well beyond the one-year limitation in the insurance policy.

Defendants cannot now assert the position that Mr. Pickett is forever barred from bringing his legitimate claim simply because he did not file a lawsuit while CNIC was still investigating the claim. Defendants have waived the one-year provision in the policy because they delayed their investigation. As such, Defendant's motion must be denied.

**B.   DISMISSAL OF MR. PICKETT'S CLAIMS AMOUNTS TO UNJUST FORFEITURE**

Another exception to "Suit Against Us" adhesive clauses and provisions arises when the dismissal of an insured's claim amounts to an "unjust forfeiture." As explained in *Zuckerman*, "the key factor in the determination of this issue is the question of whether the insurer has shown prejudice by reason of the delay in filing suit."

Arizona law recognizes insurance contracts as contracts of adhesion. As such, enforcement of limiting clauses like the "Suit Against Us" provision require the insurer to demonstrate that they are not prejudiced by a filing after the one-year deadline. Here, CNIC has not alleged that it is prejudiced at all. In fact, since it became aware of Mr. Pickett's claim, CNIC has investigated, retained counsel to protect its interests, requested documents, and conducted an examination under oath. As described herein and as demonstrated in the attached exhibits, CNIC continued its investigation well after the one-year limitation. CNIC cannot assert prejudice. To the contrary, it is Mr. Pickett who would be prejudiced if he were not able to litigate his legitimate claim.

The *Zuckerman* court explained that statutes like A.R.S. § 20-1115(A)(3) are "…intended to allow [insurers] to protect themselves from fraudulent claims, not to relieve them from patently just ones." *Zuckerman*, 133 Ariz. at at 143. Here, Mr. Pickett has lodged a legitimate and just claim. It was investigated and ultimately denied. Mr. Pickett's only option now is to sue CNIC to realize the benefit of the insurance policy. Permitting CNIC to avoid Mr. Pickett's legitimate claim by virtue of the "Suit Against Us" clause is unfairly prejudicial. As such, this Court should deny Defendant's Motion.

## IV.  **CONCLUSION**

Although Arizona law permits insurance companies to write-in provisions that purports to limit the period that an insured can file a suit, Arizona courts recognize that there are exceptions. Here, Mr. Pickett was routinely told that CNIC was investigating the claim. Mr. Pickett actively participated in CNIC's investigation. CNIC took until April 2017 to deny the claim and close their file. CNIC should be equitably estopped from invoking the one-year limit after they caused Mr. Pickett to miss that contractual deadline. Moreover, CNIC has not demonstrated that it is prejudiced by a lawsuit after one year. CNIC cannot claim prejudice as it has investigated the claim, hired counsel, interviewed Mr. Pickett, and examined Mr. Pickett under oath. It is Mr. Pickett who would be prejudiced – barred from litigating his legitimate and worthy claim. Dismissing Mr. Pickett's claim would reward CNIC for delaying its resolution of Mr. Pickett's claim until after the 1-year deadline. This Court should not permit such injustice. Accordingly, this Court should deny Defendant's Motion and permit this matter to be tried on its merits.

**RESPECTFULLY SUBMITTED** this 27th day of September 2019

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MILLS + WOODS LAW PLLC**

By <u>   /s/ Sean A. Woods          </u>
    Robert T. Mills
    Sean A. Woods
    Scott Griffiths
    5055 N 12th Street, Suite 101
    Phoenix, AZ  85014
    *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of September 2019, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

>Levi T. Claridge
>1850 North Central Avenue, Suite 2400
>Phoenix, AZ 85004
>*Attorney for Defendant*

/s/ Elisabeth A. Small